Case number 17-1144, Matson Navigation Company, Inc. Petitioner v. United States Department of Transportation, et al. Mr. Perrin for the petitioner, Mr. Ross for the department, and Mr. Burgess for the intervenors. Good morning. Good morning, Your Honor. May it please the Court. Mark Perry for Matson. I'd like to start, if I may, with the jurisdictional question, acknowledging the uncomfortable problem of coming to this Court as the petitioner when the jurisdiction is not entirely clear. We wish that it were, and we hope that this case, if nothing else, will clarify that. The Hobbs Act says that this Court has exclusive jurisdiction over all rules, regulations, and final orders issued pursuant to Section 50501 and others. The various defense and other subsidy statutes and so forth, 50501 is the recurring feature as it divides the world essentially into domestic trade, which requires citizenship, and foreign trade, which does not. And that's a basic structure of this statute. The question here, the jurisdictional question here, I think boils down to this. If the agency's order rests on citizenship, is that enough to invoke the Hobbs Act? And if it is, then this Court has jurisdiction over this case because the eligibility awards here made citizenship determinations. That's undisputed. So let me ask you, both applications for these two replacement vessels ask the agency to grant the substitution pursuant to 48 U.S.C. 53-105-F. Correct. So the agency grants it, and it says we're granting it because you meet all the requirements, and one of the requirements is citizenship. I'm not clear it's not an issue at all, but the applications were granted pursuant to, it doesn't say this expressly, but the parties seeking approvals said proceed under 105-F. And this is the statutory hopscotch, Your Honor. 53-105-F is replacement vessels, which must be eligible under 53-102-B. Right. 53-102-B says one of the requirements is citizenship under 53-102-C, and 53-102-C defines citizenship as 50501 citizenship, statutory citizenship. So my only question is, under your reading, then the Hobbs Act listing really is no limitation whatsoever. And I'm not suggesting that you might have written a better statute in terms of not having this hopscotch both within the statute as well as within two different courts. So that's exactly right, Your Honor. And so the question is pursuant to, the Supreme Court just gave us some guidance on pursuant to in the Waters of the United States decision, said that the, that was a regulation case, whereas this is a decisional case, but I think the analysis is the same. Did the decision of the agency rest on, was it made under, was it made pursuant to that statute? I think there's little question that the eligibility awards, the subsidy awards. What's the final order here that's being challenged? Your Honor, the final order is the denial of the administrative appeal, which picks back up the eligibility orders. And the final agency action is all of them together. I thought it was the April 7th letter, right? Which is the denial of the administrative appeal. Yeah, and there they say it's lack standing. It was a standing issue. Correct. So that's what, isn't that the issue that you've appealed? No, Your Honor. We have not challenged the administrative standing. We do take the position that the administrative appeal was sufficient to bring us within the Hobbs Act period, because the agency said. The reason you lost before the agency is they said you didn't have standing, right? Your Honor. Why isn't that an issue? That was the final order. That's what the final order was. Your Honor, Matson is not a party to the agency proceedings. Right. And this was an application by APL granted by the agency. Right. We read the regulation, 296.50, says you must exhaust your administrative remedies before you can go to court. The only procedural mechanism for exhausting the administrative remedies in the MSP statute of regulations is the appeal provision. So we filed an appeal. Right. The agency said you can't file an appeal because you're not a contractor. Fine. Then what they're saying is there's no exhaustion requirement for noncontractors. But that's not what the regulation says. The regulation says you have to exhaust your administrative remedies, and, of course, the background rule is you have to exhaust your administrative remedies. So that action was sufficient to toll the Hobbs Act period for the final agency action, which is the award of the subsidies under the Stone v. INS case. And, therefore, what we are in the court challenging is the subsidy award. They've said we don't need an administrative appeal. Fine. We'll know that for the future. But in this case, I don't think we can be faulted, frankly, for having tried to exhaust the administrative remedies given the regulation that said we had to. So the orders you're appealing are the two decisions awarding or authorizing the replacement. Correct, Your Honor. Vessels. The final agency. October 2015 and December 2016, and they're brought up as part of this package. Through the administrative appeal. Because the final agency action is the award of the subsidies, and they were rendered non-final by the administrative appeal under Stone. And then the final agency order under the Hobbs Act is the April appeal denial, which is why the 60 days kicks in and everything's timely. And then back to the jurisdictional point before I turn to the merits is, is it enough that those awards rest on citizenship, in which case this court has jurisdiction, or is it required that the challenge be to citizenship, and we do not make a citizenship challenge, in which case the case goes to district court. And that's, I take it, to be the agency's decision. The question seems to be, when Congress says pursuant to the Hobbs Act, we look at the statutory authority that was exercised in making the decision. We don't look at the claims that are raised or the challenges that are made. So when it says pursuant to, does it mean every source of statutory authority exercised in the course of making the decision, which would include 50501 when they decided that issue, or does it mean what authority was asked for, you know, the final action of approval, which was a 53001 or whatever section, or is it both? Do we look at the core issues? I just don't, I don't know what we're supposed to look at, but the one thing is, is the argument seemed to be that if jurisdiction were, or citizenship were challenged, then of course it would be pursuant to 50501, but that seems to me exactly wrong. That focuses on parties' claims. The question has, I get this, but I'm just trying to set up for you where I'm, I have struggled with this, so I'm going to lay it out for you. So how do we understand pursuant to without looking at the party, what arguments the parties are raising in court? Is it we have to pick one or the other? Is it every authority exercised? Your Honor, I agree with you that the challenge shouldn't be determinative. I think that the Waters v. United States case, NAM v. DOD, gives us some guidance, and it's at page 12 and 13 of the slip opinion, and footnote 8 in particular, where the Court says essentially it's not enough that the agency recite the statute. You know, the agency's rulemaking is always list a bunch of things. It's not enough that they're just listed in there. It's that the decision must actually have rested on or be made under that provision, which I take to mean that that provision is. And here it rested on standing. That's my point. It was issued pursuant to a determination of standing. And that's not one of the categories that gets you straight to the Court of Appeals. As to the appeal decision, Judge Griffith, absolutely. As to the award decisions, however, they did make a citizenship determination as a statutory prerequisite to the awards, and therefore in that sense they rested on it. And that's the breadth question. And, again, this is an open question. There's not been a lot of MSP litigation, and, again, I acknowledge it's a little uncomfortable for me to stand here. It's the Court's jurisdiction, not mine. It is exclusive jurisdiction, so we had to come here and make this request first. We have plenty of time to go to district court if we can. Judge Millett, I think the Supreme Court's decision suggests that in the most recent cases that if the statutory provision that's listed is necessary to the agency's decision, that it's within the enumerated statute. That would tend to suggest that this Court has jurisdiction. However, the Supreme Court also said in the same decision that the presumption in favor of Court of Appeals jurisdiction doesn't apply when you have one of these enumerated statutes, which is what we have here. And so that sort of cuts in favor of the government. In other words, if this statute is literally ambiguous, then we would have said under Florida power and light that the tie goes to the Court of Appeals, and now the Supreme Court says the tie goes to the district court. And that's, again, I think that's a little bit of a change in the law since we brought this case, but that is at issue here. I'm not sure I can add much more than trying to figure out what the Supreme Court's telling us. So I guess, I mean it sounds to me like you don't really care one way or the other, but I would assume that since you're the one that came here and voked our jurisdiction that you would have, you told me the one hand on the other hand, now what is the best answer? So we think this court makes more sense because these are determinations that don't require an extensive actual record. They're made in the agency. Often there are speed determinations, right? This is a competitor situation where the subsidy every day is eating into my client's business, and it goes faster to come to this court. It makes sense, we think, that Congress, having made citizenship sort of the baseline requirement for many things in the Merchant Marine, the reason the Hobbs Act is written the way it is for Title 46 is basically to say if it's a citizenship type question, then it goes to the Court of Appeals, that is an eligibility question or a participation question, rather than if it's an operational question, then it may be a district court situation, and that I think would make sense. So we think it would make sense to have a Court of Appeals jurisdiction. We think the Hobbs Act can clearly be read that way. It would provide for a faster resolution, and that's why we came here. So I saw the Guam decision where they, I think, six times invoked 50501 as part of their decision, the APL Guam, sorry. They did it there. They did not, that I could find, invoke 50501 in the APL Saipan decision because they were relying on citizenship, citizen trust there. So what I'm trying to figure out then, does that mean that the one where they exercised 50, actually on the face of it exercised 50501 authority comes here, and the one where they didn't? Because you don't always have to have 50501 citizenship. I would disagree with that, Your Honor. The agency always must make a determination on citizenship under 53102C, which then refers back to 50501. So there is a citizenship determination. The basis for citizenship in the two vessels because of their ownership and chartering structure is different, but the agency still makes a citizenship determination. 53102C itself doesn't always require 50501 citizenship. That's correct. It requires a citizenship determination. All right, but that's not necessarily 50501. 50501 is a particular type of citizenship determination. That is correct, Your Honor. So I don't understand your argument then because it can't be enough that they had to do, find 53102C satisfied in one of its forms to exercise 50501. Right. Fair enough. The agency must make a citizenship determination under 53102C. But they didn't do a 50501 in the Saipan case. Correct, Your Honor. So is there any? So on what authority would that one be? Well, Your Honor, again. Your argument had been. . . No, no, no. Don't get me. The Hobbs Act is confusing. Your argument had been that they had to make a 50501 decision, which they did in the Guam case. They did in the Guam case. But they didn't in the Saipan one. So what is your argument as to the Saipan one? Well, we think they're both here because they made a citizenship determination. The citizen trust is still a statutory citizen that required a 50501 determination because they also adopted in the Saipan decision their analysis from the previous. The ultimate holding company here is the same. The applicant is the same company. They have a different ownership structure because of the vessel. But they still have to make a citizenship determination. So we think both. . . But a citizenship determination is not a 50501. They had to have U.S. owners, but that could be an individual. And that's not a 50501 decision. I agree with you, Your Honor. So you could end up with this odd, bifurcated situation in that scenario. Which seems no better. Which doesn't seem helpful. On the merits, Your Honor, Saipan, we would submit, knocks these vessels out of the program. The statute says that the vessels must be engaged exclusively in foreign trade or exclusively in foreign and domestic trade under a registry endorsement. Saipan is not. . . I have some more background things going on here. First of all, how do these proceedings work when APL applied for these substitutions? You said you weren't a party. So is there public notice of these proceedings? Is the public allowed to participate in any way in these proceedings? How did you learn about the decisions? This is not in the administrative record, Your Honor. My understanding is there's not a formal notice proceeding. There is industry chatter, if you will, and general understanding of what the relatively small number of large container ship operators are doing. Matson, in these cases, became aware at some point during the first application process and was aware of the application only after the first application was granted actually had knowledge of what MERAD intended to do here. These were the first time. . . How did you get that knowledge? When they issued the order. So is that a publicly available order? Correct, Your Honor. And this is the first time in the history of the program that MERAD has ever granted a subsidy to vessels in the domestic trades. And so it came as a surprise. And then in the second application. . . Well, then why didn't you challenge that one in a timely manner? Well, Your Honor, they then had the second one pending. We did jump in and put in letters in the administrative process. So that may help you on the second one, which doesn't have 50501 in it. But as to the first one that does have 50501 in it, you didn't do anything for over a year. Well, the application in the second one referenced the first one. We challenged the entire operation. We said that the domestic trades were outside of it. Again, we weren't a part of the proceeding. Then in that second award issue, we brought the administrative appeal as to both. The agency, while ruling outstanding, did not say either one was untimely. And the agency's rationale continued to change. Remember, the first award says nothing about mixed domestic trade. It simply said worldwide services. It never even acknowledged the problem of domestic trade. I think it was because Mattson put in those letters during the second application process brought the problem to the agency's attention. The agency's rationale then shifted, became mixed foreign and domestic trade under a registry endorsement. That's what we challenged under the regulation. And never has dealt with SIPAN, never has reconciled the operation on the SIPAN trade with the registry endorsement problem. The agency's argument in this court is that that statute, 53105A1A, goes only to the operating agreement and not to eligibility. But that's wrong because 53102B, which says eligible vessels, says that the vessel has to provide transportation and foreign commerce. And the agency's regulation, 296.2, defines foreign commerce as exclusively foreign trade or exclusively foreign trade and domestic trade under a registry endorsement. It's identical word for word from 535105A1A. So that is an eligibility requirement, and the agency here simply failed to grapple with an important part of the problem. They have awarded subsidies to vessels in the domestic trades, not subject to a registry endorsement, not subject to any other statutory exception, and therefore not eligible for the program. That's the basic of the substantive challenge should the court have jurisdiction again. What record does Ms. Merritt create in making these decisions? Is it just the submissions of the applicant and then their decision? Because you said you're not a part. You could send in letters, but are they part of the record of this decision or are they just something the agency's getting? So what we have delivered to this court as the appendix in this appeal is the entire administrative record compiled by the agency and delivered to us on our request. That is the publicly available documentation of this transaction. Perhaps my colleagues can tell you whether there were behind-the-scenes discussions or memos or anything else, but this is the publicly available record that a non-party competitor has access to. We are aware there are confidential materials, apparently, that have been either redacted or withheld. The parties agreed not to rely on them, but, again, we don't know what they are. All right. Let's hear counsel for respondence. Thank you, Your Honor. Cason Ross for the United States. As this court or, excuse me, the Hobbs Act clearly provides this court with direct review of agency actions issued pursuant to certain enumerated statutes. The Maritime Administration decision here was not issued by reason of the authority of any of those statutes. Matson has challenged two vessel replacement applications issued pursuant to 46 Section 153.105, which was based on vessel eligibility determinations under Section 53.102. As my colleague was explaining in his opening remarks, that statutory hopscotch only underlies why those decisions were not issued pursuant to Section 50.51, which is listed in the Hobbs Act. Wait. How do we – let's look at the decision on the Guam vote, okay? They cited 50.501 six times in making necessary determinations to eligibility. They were necessary. They weren't contested, but they were necessary. Actually, they're contested because there's no other party to these proceedings other than the person asking for it. All right. But they made that – six times they made that finding. So how do we know – what is your – how do we know that this wasn't issued pursuant to 50.501 as well as the MSP authority? Well, two responses, Your Honor. First is Judge Griffith's concern is – which the agency decision under review here is the letter issued in April 2017, which nowhere cites Section 50.51. And in Mattson's administrative appeal, nowhere cited 50.51. Thus did not challenge – No, but you've got one decision. This wasn't where you had – this was the same decision maker. This was one entity deciding this in Merritt. It wasn't like an ALJ and then a board appeal. You have one. And so once you have that final decision under Stone v. INS, it brings up all the substantive orders as well. I mean, right? Isn't that a natural understanding of how this works in a situation like this when it's the same decision maker? But Mattson didn't have the ability to bring an administrative appeal in the first instance, as the agency explained. Who cares? The question is whether they're authorized to come to this court. The agency can't say only one side of all these disputes can have an administrative appeal and therefore only one side, the contractor, the applicant, can ever go to court. Anyone else who disagrees with the contractor is foreclosed from going to court by our agency administrative regulation. You surely can't say that. The agency's position is that had Mattson wished to bring a challenge to the October 2015 and December 2016 decisions, it simply could have brought a challenge under the Administrative Procedure Act in federal district court. There would have been no timeliness concern nor any of the waiver concerns. What if they wanted to challenge the citizenship determination too? Were that the case, then this court would have discretion to exercise pendant appellate jurisdiction over those. No, no, but then he would have had to come here, correct? Mattson would have had to come here. That's correct, under the Hobbs Act. All right, so it doesn't matter what your administrative appeal regulation says about who could appeal or not. Your answer was if they wanted review, they didn't need to bother with the administrative exhaustion, they could have filed suit immediately, and they had to come here. Under the Hobbs Act, that is correct. Why does their challenge matter? Why does that change the authority under which the agency made its decision? If the agency is evaluating the vessel operator's citizenship and Mattson were to bring a challenge to that, then the Hobbs Act vests this court with jurisdiction. No, no, the Hobbs Act doesn't care a whit about what challenges are brought by a party. That's arising under jurisdiction, which looks at the claims presented. The Hobbs Act asks only at the time the agency issued its decision what statutory authority was it acting pursuant to. Now, the statutory authority it acts pursuant to can't turn on what challenges a party later brings in court, can it? No, Your Honor. Okay, so we have to look at what authority. I'm sorry, I have to make sure we're agreed on this because I found this very confusing. The only question is what authority they acted under when they issued, and let's just start with the Guam decision. What statutory authority did they exercise? And if you read it, there's lots of the MSP, 53-101, et cetera, authority. That's the big decision. But there's six times they say they are a citizen under 50-501. Does that mean that they were acting under both statutes at the time they made their decision? So at the time that the agency issued its October 2015 decision, it would have made a citizenship determination to determine the vessel's eligibility for the replacement applications. However, I keep saying October 2015 because the HOMS Act also provides in 28 U.S.C. 2344 that there's only a 60-day timeline for review. Now, put aside all those issues. I just want to understand. So your position is if they had filed a timely petition for review of the Guam decision, they would have skipped the administrative process, appeal process, and they would have within 60 days filed, and they would have had to file here for that decision because it made 50-501 decisions. Is that your position? The government's position is it should have been filed in district court under the administrative procedure. Okay, but I thought you just told me they were supposed to come as to that decision just as until October 2015 when they were making a decision about citizenship. How would they challenge that? But the agency's decision as to citizenship was only one of the issues addressed. It would also be a question as to what the actual claims brought under the party challenging the agency's decision. But I thought we agreed. This is where I think we're going a little bit in circles. I thought we agreed that for a HOMS Act jurisdiction, it doesn't matter what the party's challenges are. It matters only what statutory authority was being exercised by the agency when it made its, in this case, final order. Are we agreed on that? If the party is challenging the agency's exercise of that particular statutory authority, if Masson is not challenging No, no, but the HOMS Act doesn't say, where does the HOMS Act say the jurisdiction depends on what's being challenged or what claims are raised? Where does it say that? It says challenges to orders, rules, or regulations of the Secretary of Transportation issued Pursuant to. Pursuant to. So the agency at the time it issued its, made its decision in October 2015 had to be exercising some statutory authority, correct? Correct. And whatever statutory authority it was going to exercise doesn't depend on what someone might argue about later, does it? Not necessarily. That doesn't at all. Congress can enact a statute under the Commerce Clause and the Bankruptcy Clause and that's what it's acting under regardless of whether anyone later challenges the Commerce Clause authority, right? Correct. Okay, so I thought you said that because the Guam decision, I thought you said, and this is where I may be wrong, that the Guam decision, in making that decision, they clearly exercised their power under 53, the MSP program. Correct. They clearly did that. But they also made citizenship determinations under 50501, correct? Correct. So were they in doing an exercise in making those citizenship determinations under 50501, were they exercising their statutory authority under 50501? Yes, but I will express that if the court were to decide that any agency decision issued pursuant to Section 50501 would give this court jurisdiction under the Hobbs Act, it would sweep incredibly broadly. It may or may not, but I'm just asking you. Okay, so if your view is yes, they were exercising that, but that doesn't count for Hobbs Act because then lots of things would be under the Hobbs Act? In addition to our threshold argument that they have not challenged the citizenship determinations at issue here. Please, I don't understand why you bring that up. Why does that matter? If they did, we would have to be in this court, is your position. Correct. Because suddenly that decision would be issued pursuant to 50501? Because they would be challenging a rule, order, or regulation. Which the Hobbs Act doesn't care about. Right. I apologize, Your Honor. I just don't understand why their challenge matters at all. If you agreed that that decision, the October 2015 decision was exercising both powers, the MSP power and the 50501 power, then why does the Hobbs Act mean, how do we know we don't have authority under 50501 and supplemental jurisdiction over the MSP challenges? You would have discretion to exercise supplemental appellate jurisdiction over the additional challenges. Were they bringing a challenge under section 50501? No. My theory is they made a decision pursuant to 50501, and we would exercise supplemental authority over the MSP decisions. The agency is, is that? I'm sorry. No, the we. That would be our authority to address it. I suppose the government's position is that were a challenge brought to a citizenship determination, that would be a claim under section 50501. Their claims are brought. But the Hobbs Act doesn't require a claim under 50501. Correct. Does it? It requires challenging a decision issued pursuant to 50501. And we agreed that the October decision was issued, at least in part, pursuant to 50501. Correct. But the parties are. You say that's not enough for Hobbs Act jurisdiction. Correct. Because it has to both be issued pursuant to and challenged by the partner. Correct. And indeed. But the, the court should also note that the, if that were, if it were to read the Hobbs Act so broadly, that would be in significant tension with the Supreme Court's recent decision in National Association of Manufacturers, the Department of Defense. And there's also a purpose of reading of the Hobbs Act itself, which grants this court exclusive jurisdiction to review these orders. Now, citizenship determinations under section 50. When you say these orders, what are you referring to in this case? The October 2015 and December 2016 orders, I believe. Those were orders? Yes. They weren't just final agency action? There's a distinction. I mean, the Hobbs Act talks about final orders. Correct. The agency would characterize those as orders. But. As final orders? Correct. The citizenship determinations appear throughout the United States code in the China Trade Act for electric and hybrid vehicles, for exports of Alaskan North Slope oil. I get that. I get that. That's a great argument if there's ambiguity. I'm not sure you've identified ambiguity. But let me ask, let me ask this another way. Because you're worried about sweep. And I understand that argument. Does Mayor Adam slash DOT ever make freestanding 50501 decisions? Or are they only made in the course of programs? They would normally be made for vessel operators. I'm not sure if they're made independently of a vessel application. Because you look at 50501, it's a definitional provision. That's all it is. Correct. It's a definition. And so I'm trying to figure out what on earth Congress thought would come under 50501. I'm worried about the other. There's two bad problems here. Going too broadly. And writing 50501 out of the statute. Because if you look at 50501, like I said, it's just a definition. It has no operative provision. It doesn't provide a procedure for just asking for citizenship. I could find no case where anyone just said, hey, I'd like to be a citizen under 50501. It's always done through other programs. Congress wrote that as a definition that was going to apply in other parts of the statute. So then what could it possibly have meant when it said agency act orders pursuant to 50501? There's never an order pursuant to a definition. It's always going to be applying that definition in another program, isn't it? But had Congress intended to sweep all of the agency's decisions under the Maritime Security Program into Hobbs Act jurisdiction, it easily could have done so. But they aren't all in. It's only when there's 50501 citizenship, as I think you've noted. There isn't in the Saipan case here. There's a lot of ways of getting ‑‑ not a lot. There's enumerated ways of satisfying practically 102C. They don't all require 50501 decisions. So I'm not sure it's quite as broad as you're suggesting. And you can't seem to give me an example of when there would ever be Hobbs Act jurisdiction under just 50501. I can't point to a specific example at this point, Your Honor. I'm happy to submit additional authority to the court if they so request. But I would also suggest that the text of the Hobbs Act also sweeps in large sections of the U.S. code for this court's jurisdiction by listing subtitles, chapters, parts, and subtitles or subchapters of Title 46. And in this case, Congress easily could have written Chapter 531 of Title 46 and would solve this question quite simply. Because it didn't do so, it must have limited review in this court to determinations strictly under 50501. Which are never made. Right. And now we're back to square one. So that's just ‑‑ I mean, there is another statutory construction, I guess, reading something to sort of nullify a statutory provision that has no meaning and does no work. We have to worry about that, don't we? That's not true, Your Honor. Here, as I just expressed, Congress could have included many more statutory subsections in the Hobbs Act. I'm just asking about, does the 50501 do any work at all being there? Because it's very hard for a court to say, we have to exercise the jurisdiction assigned to us. And so I think it's somewhat troublesome for a court to read a jurisdictional provision in a way that says, pay no attention to that 50501. Surely they didn't mean it. It doesn't do anything by itself. But if we do, you know, if we actually exercise it when the agency invokes that authority, we'll have too much jurisdiction. Your concerns are very valid, but that seems to be a valid concern as well. As the district court held in Liberty Global, there would be a possibility to bring a challenge to a citizenship determination. And as that court held, that would appropriately be brought in the courts of appeals under the Hobbs Act. So that requires reading the Hobbs Act to turn on the claims brought by the petitioner, not the statutory authority exercised by the agency. In a way, yes. Not in a way. That's exactly what it turns on, correct? Yes. But I would also provide that there are additional hurdles to the petitioner's challenge in this case once the court decides that there is jurisdiction. Neither of the agency decisions that they purportedly challenge are timely under the Hobbs Act. And that timing requirement is jurisdictional and not subject to equitable tolling. They make the argument it's not clear whether they have to file an administrative appeal. So just like they say in their petition here, this is a protective petition. So they argue tolling during the pendency of the administrative appeal. They could have done so, Your Honor, but did not. Could have done what? They could have filed a protective petition in this court while they had filed the administrative appeal but did not do so. And as the Fifth and Tenth Circuits have both held. But then we would have had to decide whether or not it had to exhaust its administrative records, right? The agency's position is that Mattson could not have sought an administrative appeal and because that administrative procedure Because it was not a contractor. Correct. As the agency's regulations clearly state. And as happens in this court regularly The regulations clearly say only contractors can It says a contractor. A contractor. Correct. Must file an administrative appeal before going to court. It says may file an administrative appeal. Correct, Your Honor. Yes. And so because they had no ability to file an administrative appeal they could not have tolled the Hobbs Act's timing requirements which, again, this court has held are jurisdictional. And as the Fifth and Tenth Circuits have held even if there were equitable tolling under the Hobbs Act Wait, wait, wait, wait. I'm sorry. The exhaustion thing cannot be jurisdictional. Exhaustion is not jurisdictional as to them. If Mattson had not sought an administrative appeal the government would not have argued that they had not exhausted their administrative remedies because they did not have any administrative remedies. So we could not have made an exhaustion argument. However, back to my original point is that Because it's so bad for a party to go It looks rather one-sided but we're going to try first because it's always best to let the agency have the first bite at this exhaustion. It's better for the process all around. And we're concerned because it wouldn't be heard of for the Justice Department if we went straight to court to suddenly start saying we were supposed to exhaust. So why isn't that a sound basis for tolling as Judge Rogers said? Admittedly, that is perhaps a sound basis but that problem only arises where the court to decide that there is Hobbs Act jurisdiction. Again, it's the government's position that a challenge should simply be brought in federal district court under the Administrative Procedure Act when none of these problems are at issue. Petitioners have not filed any sort of protective petition in district court. They assert that they would but they have not done so throughout the pendency of this litigation. Just to be clear, if he stood up on rebuttal and said actually we do mean to challenge citizenship then suddenly jurisdiction here wouldn't materialize. Assuming we cried to the bat at this late date. It wouldn't materialize, correct? Under your view? Assuming the court's precedent on forfeiture and waiver did not apply. Just assuming we cried. Putting that aside because I'm asking a jurisdictional question. Then it would suddenly materialize. The court would have discretion whether to exercise pendent appellate jurisdiction over the remaining claims. So is part of the problem here that the nature of the proceedings are not your typical agency proceedings. So that if there is to be any challenge you ought to go to the district court and work out all the details, the facts, etc. Put in your evidence. As opposed to coming to the court of appeals because we're going to ask all these questions that we normally ask in administrative appeals and your process is not set up as sort of an APA process. You're absolutely right, Judge Rogers. My colleague was asserting that perhaps jurisdiction was best held in the courts of appeals where there is an administrative record but at the same time he then went on to question whether the administrative record in this case is actually complete. You can't mean that answer. You cannot mean that answer because if his petition said we challenge citizenship you would agree that your procedure is perfectly fine to come straight to the court of appeals, correct? Correct. Well then the procedure can't be good for one issue and not for another, can it? Maybe you went too far on that, but I don't know. But the point would be that if Madsen had argued neither of these vessels meets the requirements of citizenship what would the agency have had to have done?  I'm not sure. You mean you could just ignore it? Well, you're saying they don't have any right to administrative appeal because they're not a contractor. So the only thing, as I understood you to say, was they could go to the district court and they could challenge the subsidies on the grounds that they're being granted or awarded to vessels that do not meet the statutory requirements. Were it the case that a party had advised the agency of problems of its administrative proceedings certainly the agency would investigate in good faith those allegations. As this court has regularly held, the agency is certainly entitled to a presumption of regularity on these sorts of issues. You say of course the agency would have done this. Do its regulations give me that kind of assurance? It's possible for other parties other than the particular applicant in the proceeding to submit materials to the agency and the agency would consider them, yes. But the only way you'd know about it is by word of mouth. It depends on the specific circumstances. Well, I'm dealing with this case. It's very difficult to understand what happened here and who knew what when. Right. All right? But I gather from what counsel told us there's an informal channel so everybody knows what's going on. But that's not part of the formal agency process. Correct. So by the time it comes here, we're not sure what we have. And that's why you go to the district court first to work out all these things. That is another reason for that, yes, Judge Reuters. So if citizenship, if a letter had been sent to the agency saying one of these vessels should not be eligible as a substitute or replacement because it's not a citizenship, then your representation is the agency would have addressed that and in its final order have set out the reasons it concluded that the vessel was qualified because it did have the requisite citizenship? I can't say conclusively that the agency in its final record would address that particular argument made to it, but the agency would certainly have investigated in good faith whether those allegations were true because in this particular case the agency is interested in the best operations of the Maritime Security Program. I'm not suggesting bad faith or anything like that. I'm just trying to understand if I'm not a party to the proceedings and I write a letter, I don't know what I'm entitled to. And you just told me I'm not entitled to take an administrative appeal because I'm not a contractor. But you would certainly be entitled to take an Administrative Procedures Act challenge in federal district court. All right. Anything further? No, Your Honor. Thank you. Thank you. Interveners? Shed light? Sure. May it please the Court. Brian Burgess for the APL Interveners. I would like to talk at some point about the merits and particularly the Saipan issue since Mr. Perry referenced that, but since the Court has been focused on jurisdiction and because I think our position might be slightly different from the government's, I'd like to start there. We think that this order was issued pursuant to 53-105F, the vessel replacement decision. We also think that it is not enough for a decision to the fact that it sort of references or implicates or in Mr. Perry's formulation rests on that there's a potential cross-reference to citizenship. And we think the structure of the Hobbs Act makes that pretty clear. If you look at the I want to make sure I heard you just right. Sure. Your view is even if a decision rests on 50501, that's not enough. Did you just say rests on? I said rests on in the sense that it is like one of the check marks that Well, it's a required determination. Right. It's statutorily required. Statutorily required, right. But it's not If you don't check that box, you don't get, assuming you didn't claim to meet any of the other requirements here, you don't get this certification. It is a prerequisite to Necessary determination. That's right. But we don't think that that is the authority under which they're acting in granting or denying a vessel replacement decision. And the reason we think mere cross-reference, the fact that it's one of the considerations that must be considered, can't be enough. I think it's clear from the structure of the Hobbs Act. When you see the enumeration and the particular statutes that are referenced, for example, 56101 and 56102, are also provisions that have citizenship determinations embedded. They're provisions about restrictions on vessel transfer. And part of the decision there is a citizenship determination. So it would just be redundant. Sorry, is the citizenship determination there solely satisfied by a 50501 determination, or can it be satisfied by other things? It's using, the statute uses citizenship, which 50501 provides the general definition that applies to the subchapter. No, no, 50501 provides a particularized definition of citizenship for certain types of entities, partnerships, corporations, these types of things. It doesn't cover trusts. It doesn't cover individuals. There's lots of ways to be citizens, as apparently from the Saipan case, that don't involve 50501. So if those other statutes may at times involve 50501, but many other times won't, then there's a perfectly sensible reason for Congress to list them, because it's sweeping all decisions in, whatever the source of citizenship. Is that a fair reading? I take that point. I think there still would be an overwhelming amount of redundancy. And to pivot to Your Honor's other question about what would 50501 be doing, I mean, we think one thing that would clearly fall under it is if there were a regulation issued by the agency interpreting the scope of citizenship. Well, I guess. Well, sure. Okay, that's all? Then they would just say regulations issued. But there's never a 50501 decision by itself, is there? Not that I'm aware of, but the statute says all rules, regulations, or final orders applicable to a broad enumeration of categories. So we don't think it's exceptional or that it suggests that it's not doing any work, the fact that maybe only regulations would apply to this one, but other provisions would implicate rules. And we think 5502 is another instance in which there's not. If the agency did a regulation and then they applied that regulation in making the decision, would that decision be issued pursuant to 50501? I'm sorry, could you repeat the question? If there was a regulation that was promulgated and they used that to make a decision about 50501 citizenship in another program. If that were the basis. Would that be a decision pursuant to statutory authority under 50501? I think the answer is probably yes. Yeah, and so if they make a decision without a regulation just under the statute itself, 50501 is meant. I think it's relevant here that the particular statute under which they're operating is a decision about vessel replacement, and there are criteria that need to be met. I think it would, among other things, would avoid the problem that Your Honor noted, that there would be a distinction between review under the APL Guam and the APL Saipan where only one of them implicates a citizenship determination under 50501. If you read it more narrowly as what is the actual basis of the decision. Someone could ask for supplemental jurisdiction over the other one just to have a single, not to have to do dividing their cases, or sometimes people just have different, you know, those were separate agency decisions, and one agency decision goes one place because of the statutory authority that was exercised, and another one goes another place because of the statutory authority that was exercised. That's exactly what the Hobbs Act envisions. Sure, we don't quibble with that, but we think a more sensible reading and one that is certainly available under the language of the statute would channel all decisions about vessel replacement applications to one place rather than parties bifurcating under the accident of whether there is a citizenship determination underlying. That position would be the same even if the only matter in dispute was 50501 citizenship. That's right. I mean, we agree with Your Honor's position that the jurisdiction shouldn't turn on what the particular argument that the party is raising. We know that there are other decisions, decisions from the Third Circuit, the Conoco and the Eastern Global decision from the Eastern District of New York. As we read those decisions, they did sort of rely on the question of what is the party raising. Right, but that doesn't mean it's textually right. No, that's right. I mean, we think if the court were persuaded by those decisions, they wouldn't apply here. They're easily distinguishable because it's not raised, but we also don't think that those are rightly decided and that the better... Sure, but just to be clear then, your position is that if the only issue before the agency and the only thing they decide in granting MSP status is a hotly contested issue about satisfying 50501 citizenship, that the right answer is that Congress wanted that 50501 decision reviewed in district court. So your question is if that were the only issue contested? Because it's not possible... The only issue decided by the agency. Well, I don't think that's possible under the statute because 53105F then cross-references... They check all the boxes, but nothing's contested before the agency or in court, either location. And maybe it matters if it's contested before the agency as opposed to in court. Maybe that matters if you actually had other parties to the proceedings. The only thing contested anywhere, everything else was box check. No dispute. So the only thing in the statute they spend all their time focused on, the statute they're construing in their decision is 50501, but it's to get you MSP status. Where would Congress want that 50501 determination by the agency to be reviewed? Our position is that it's going to be very unlikely that that is going to be the sole issue. Where would Congress want that 50501 decision to be reviewed? Our position is that it doesn't turn on what the party is arguing because... No, no, I'm talking about what the agency decided. Right. What the agency would have decided in that instance is that a vessel can be replaced pursuant to 53105F. Just saying, your answer is Congress would want that 50501 decision reviewed in district court. That's your position. That's correct. That's our position. Both positions sort of have their peculiarities, but we think that is a much more sensible on the whole reading that avoids a lot of the problems with the other side's position. I mean, it's a practical matter in a 53105F where the issue is about vessel replacement rather than usually the change in who the operator is and the contractor. Usually citizenship isn't going to be at issue. I mean, in these instances, it's a company that has an existing operating agreement. It already has to have satisfied all the citizenship requirements in order to do that, and it is simply asking, you know, we want to continue that operating agreement and replace it with another vessel. We have to show that the vessel meets all the requirements for eligibility for a vessel. And one of those requirements, of course, is citizenship, but in the ordinary circumstance, it's not unusual that citizenship wasn't challenged here. It's going to be the mind run of cases that it won't be. So we think it would be odd for that to drive where jurisdiction lies. Can you hypothesize that you could have, if they issue a regulation interpreting 50501, that would be the basis for having a 50501 case if you wanted to challenge it? Yes. Can people just challenge regulations without them actually being applied in a decision by the agency? How are you going to have standing? That's a fair question. All right, so there's just no 50501 cases. It's like nobody can think of one. I mean, I think if it were a regulation being... I mean, I think my answer to Your Honor's question earlier is if it were challenged to a regulation issued pursuant to that that were then implicated, you know, it might be a two-step process, but we don't think it's a null set in which such a claim could be... No, but that's going to be applied in making an MSP decision or one of these other programmatic decisions. So it'll be part of that programmatic decision, and if that programmatic decision isn't listed in the Hobbs Act, I don't know why you would say the challenge of the regulation can bring everything up to the Court of Appeals, but a challenge to the application of the statute itself cannot. I don't have an answer in terms of a particular instance in which that has been challenged as sort of a freestanding basis. We do think it is not... There is at least a theoretic possibility for there to be a regulation that's issued under it that could be challenged. And can you... I'm sorry. Go ahead. Yeah, I have a question. Regarding the letter that your client received October 27, it says, in view of the notations, findings, and determinations above, approved the transfer of the agreement to Maritime pursuant to CITES' regulation 296.30J. And then it goes on, and then at the end it says, indicate your acceptance of the actions. I'm at A46 now. Okay, thank you. And it shows that somebody on behalf of your client signed it. What does that mean practically? What I heard from the agency was these letters are treated as orders. That's right. But is this all your client gets? He gets a letter, and then if the client says, I agree with everything in the letter, that's as good as gold? You can substitute the vessel? Or is there nothing further? That's my understanding, Your Honor, that that is the final order under appeal. I mean, there was, of course, also on the record the recommendations and the sort of whole process that led to it,  And there's a robust process that includes the Defense Department and MARAD that sort of culminates in this decision, but that is the actual order that is then provides our ability to transfer the vessel and continue the program. So if you went to district court, this is the, quote, order you would be challenging? Well, we would be defending it. No, no, no, I'm sorry. That one would challenge. Somebody challenging. That one would challenge, yes, we agree with that. It's an undated signature. It's interesting. No idea what's going on here. All right. Thank you. If I could briefly talk about the merits and the Saipan issue, because that was the one merits position that Mr. Perry raised. I think there are two important things that I want to get put on the table. One is that we think it is clear under the statute and the agency's regulations that an eligibility determination, whether a vessel is eligible and whether it is engaged in foreign commerce, is quite distinct from the question of whether it has followed the requirements that are imposed under 53-105A for an operating agreement. And there's several features of the statute that make that clear. For example, the penalty for not being in compliance with 53-105A under the operating agreements is not rescission from the program. It's not that you're kicked out. It's that there are pro rata reductions. Well, what if their position was all along you were never planning to just do mixed foreign trade? You were never planning that. And the statute requires it to be just that. You were planning all along to do some forbidden trade under the statute. Maybe you suck up the penalty or the loss of a percentage of funds. But you were planning all along, and so you weren't eligible. Would that be a different answer? No. No, so you'd still be eligible. All that eligibility requires is that for this particular provision is that you engage in some foreign commerce. The question of whether you might be engaged in permissible. No, the statute says that if you get this MSP status, it has to be exclusively foreign commerce. You shall not do post-wise trade. That is what the conditions that are under the operating agreement apply. We note, by the way, that – So your view is that you're eligible for this even if you were to put into the We have no intention of complying with that exclusivity provision that we know is going to come in the agreement. But you should still find us eligible. And that the agency would go, okay, you're eligible? We agree with the first part, but not the second part of that. I mean, the agency has discretion not to agree to a transfer of vessel or not to award an operating agreement. Why? You say we meet all the eligibility requirements under the statute. Because they are allowed to make a judgment about whether this is going to be in the interest of the United States and in the interest of the military and the extent to which it is actively engaged in foreign commerce is going to be germane to that. I mean, it's worth noting, again, because this is a replacement decision, the agency has deep experience with APL, which has been a participant in this program for well over a decade, has nine vessels. Yes, but it also seems to have a procedure that it doesn't give people notice about and doesn't let people come in and be parties to. So it's getting your side of the story. Well, it's getting our side in the sense that it is aware of our service. That's all it's getting. Sure, but it is aware of our service and that we are engaged in worldwide transit and that we explain to them. But isn't it a bit much to assume that the eligibility application, which is written by the entity that wants MSP status, is going to say anything other than we're eligible? Well, but we do say things other than that. I mean, this is at page 6 of the record. We clearly lay out the service that we're going to provide. We indicate that this is going to be part of our role. No, my hypothetical was. Sure. Well, one, I guess you would say that doesn't matter. You don't need to do that. It's not part of eligibility. But it wouldn't matter if all along your intention was to not comply with the exclusivity provision. So a few things. One, that is our position that to establish foreign commerce, you have to show some foreign commerce. You don't have to establish for eligibility that you engage exclusively in foreign commerce. I think it would be a very odd thing for an operator to do to indicate that, to hide the ball in that respect, given that at the very next stage they're going to have to be part of an operating agreement and that they're going to have to certify annually under 53-106-B that they are, in fact, in compliance with. No, with percentage compliance, as you've said in your application. Right, and 322 days is a rather significant percentage. And so I don't think the sort of. No, no, no, but 322 just to be eligible, and then you can go under 322 days and you just lose some of your money. So that's right with a few qualifications. One, at less than 180 days you get kicked out of the program entirely. Also, I mean, this is a separate procedure. It's a big delta between 180 and 322. Sure, but the government also has the ability under 53-104-C to rescind a contract if they believe that an operator is in material breach. We are so far beyond what's in the briefs before us, much less the record we have. I think you are correct. Could I just make one final point about SIPAN? Yes. I think it's important to note that on any sort of interpretation, the vast majority of our trade with SIPAN is just indisputably permissible because their whole argument turns on the scope of the covenant, and so there's a dispute about that. But that is only going to implicate our carriage of U.S. cargo from the mainland U.S. to SIPAN. We also engage in a tremendous amount of service between SIPAN and foreign countries, between SIPAN and Guam, and that is clearly authorized under a registry endorsement based on the Coast Guard's regulation, which we cite in our brief, and they have not challenged. All right. Thank you.  Counsel for Petitioner? Try to keep it to a couple minutes. If I may make three very quick points. All right. Judge Millett, on the SIPAN decision in 50501, it was approved at A100 under 53102C2, which is the citizen trust provision. The citizen trust must charter the boat to a U.S. documentation citizen, the directors and management of which must be 50501 citizens. So Section C2 also requires a 50501 determination. It's not expressed in the statement, but it's expressed in the statute that 50501 is required for a citizen trust charter. All of the provisions, in fact, other than the defense contractor, which is a special exception for the Army or the Navy, require 50501 citizenship. Judge Rogers, you asked my colleague about exhaustion from the Justice Department, and he said that the exhaustion requirement doesn't apply to contractors. That's not what the regulation says. 296.50 has two sentences. One refers to appeals. It does start any contractor. And then it has a second sentence at the end, and it says, such appeal, that is the previous appeal, is a prerequisite to administrative exhaustion, not limited to contractors, and we submit that that presupposes that administrative exhaustion is required. As this Court is familiar, it almost always is required, and somebody would act at their peril to go to court without exhausting and trying to exhaust, as we did. And finally, on this SIPAN point, the statute says exclusive. Exclusively in the foreign trade or exclusively in the mixed foreign and domestic trade under a registry endorsement, and it is in the regulation, 296.2, which neither one of my colleagues even mentioned, that is picked up expressly in 53102B, the eligibility requirement. So it's no answer to say this is operational. Judge Millett, the way it works is when the vessel goes into the program, it must be exclusively in the foreign trade. If somewhere down the road, these are 10-year agreements, because of weather or operating exigencies or contingencies, it might drop below that for operationally for 320 days, they can get a deduct, but on the date of admission, it has to be exclusive. And these are the only vessels in the history of this program that have ever operated in the domestic trades.  the statutory requirements. All right. Thank you. Thank you. We will take the case under advisement.
judges: Rogers, Griffith, Millett